IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


TAMMY KAY JOHNSTON,                         07-CV-392-BR

          Plaintiff,

                                            OPINION AND ORDER

v.

CLACKAMAS COUNTY and DEPUTY
STEINBERG, personally,

          Defendants.


LEONARD RANDOLPH BERMAN
4711 S.W. Huber Street
Suite E-3
Portland, OR 97219
(503) 473-8787

          Attorney for Plaintiff

STEVEN LOUNSBURY
Clackamas County Counsel
EDWARD S. MCGLONE, III
Assistant Clackamas County Counsel
2051 Kaen Road
Oregon City, OR 97045-4035
(503) 655-8362

          Attorneys for Defendants

1 - OPINION AND ORDER

BROWN, Judge.

This matter comes before the Court on Defendants' Motion for Summary Judgment (#12).  For the reasons that follow, the Court **GRANTS** Defendants' Motion.


## BACKGROUND

On March 30, 2005, at 9:45 p.m., Defendant Clackamas County Sheriff's Deputy Steven Steinberg stopped Plaintiff Tammy Kay Johnston for driving a car with a license plate that expired in January 2004.  Before he contacted Johnston, Deputy Steinberg ran a Department of Motor Vehicles (DMV) check on Plaintiff's license plate in his patrol car and confirmed the registration had expired on January 3, 2004.  Deputy Steinberg approached the vehicle, advised Plaintiff that he had stopped her for driving a vehicle with expired tags, and asked Plaintiff for her driver's license and registration.  Plaintiff stated she bought the car from a mechanic about a month earlier and had been driving it for approximately one week.  Plaintiff explained she did not have the registration for her vehicle because the mechanic did not give it to her when she bought the car.  Deputy Steinberg appeared to accept that the vehicle was registered to individuals who probably sold it to the mechanic.

Plaintiff gave Deputy Steinberg an Oregon driver's license with an issue date of July 6, 2004.  The license listed her

2 - OPINION AND ORDER

residence as 1802 Linn Avenue, Oregon City.  When Deputy
Steinberg asked Plaintiff whether she still lived at the Oregon
City address, she stated she had moved to Gresham a month
earlier.

Deputy Steinberg ran a computer check on Plaintiff's
driver's license.  The DMV record at the time of Deputy
Steinberg's check did not reflect the DMV had issued a license
to Plaintiff in July 2004.  The DMV record, however, showed
Plaintiff's driving privileges had been suspended from
December 13, 2004, through January 12, 2005.  Although Plaintiff
was eligible to reinstate her driving privileges, she had not
done so as of the time of the stop.  The DMV record also
reflected Plaintiff had changed her Oregon City address to the
Gresham address in December 2004.

Deputy Steinberg asked Plaintiff to get out of her car.  At
that point, Plaintiff stated she had purchased the car nine
months earlier, but it had been with the mechanic for repairs for
six months.  Plaintiff denied changing her address with the DMV
and stated she had been going back and forth between her
addresses in Oregon City and Gresham.  Deputy Steinberg informed
Plaintiff that the DMV could only know about her new Gresham
address if she had reported the change.  Plaintiff explained she
had another vehicle, a Jeep, and she had gone to the DMV to renew
the Jeep registration after she had been ticketed for driving

3 - OPINION AND ORDER

with its tags expired, but she did not complete the registration process because she could not afford the fee.  Plaintiff then stated her mother had gone to the DMV to attempt to renew the tags on the Jeep.

Despite Plaintiff's statement that she had received a ticket for expired tags on her Jeep, Deputy Steinberg noted the DMV record did not show Plaintiff had any citations for expired tags. He also expressed concern about the fact that Plaintiff first told him that she bought the car a month earlier and then later told him that she purchased it nine months earlier.  Plaintiff informed Deputy Steinberg that she had purchased the car in June, but again stated the car had been with the mechanic for repairs for months.  Deputy Steinberg noted Plaintiff's insurance statement showed she had been insuring the car since January 13, 2005.  Deputy Steinberg also observed the operator's license that Plaintiff presented was issued in July 2004, five months before her December 2004 suspension.  Deputy Steinberg was suspicious about its authenticity in light of the fact that Oregon law requires individuals to return their licenses to the DMV when their driving privileges are suspended.  In any event, Deputy Steinberg advised Plaintiff that she was driving without a valid license because she had not actually reinstated her license even though she was eligible to do so.

In response to Deputy Steinberg's inquiry as to when

4 - OPINION AND ORDER

Plaintiff had obtained the license that she produced, she
responded she had obtained it at the Clackamas DMV some time
after a police officer had seized her old license during a
domestic dispute call -- possibly a "couple of months" earlier.
Deputy Steinberg pointed out to Plaintiff that the license she
handed him was issued July 6, 2004, which is earlier than the
police encounter that she had just described.  Plaintiff then
asserted her license had not been seized since July 2004.  At
this point, Clackamas County Sheriff's Deputy Gibson joined
Deputy Steinberg and questioned Plaintiff about her license.
Even though the deputies examined Plaintiff's license and
expressed reservations about its authenticity, Plaintiff denied
altering the license or having a fake one.

       Pursuant to the Clackamas County Code, Deputy Steinberg
seized Plaintiff's license and issued citations for driving
without a valid license and registration.  Plaintiff signed the
paperwork for towing her vehicle, and the car was towed.  Deputy
Steinberg then informed Plaintiff that she was free to go, and
Plaintiff left the scene to call someone for a ride.

       After Plaintiff left, Deputies Steinberg and Gibson
reexamined Plaintiff's license, compared it to their driver's
licenses, and concluded it was an altered or fake license.
Accordingly, approximately seven minutes after they told
Plaintiff that she was free to go and she had left, Deputy

Steinberg located Plaintiff using a pay telephone and asked to speak with her again.

Deputy Steinberg told Plaintiff, "I know your license is fake." Plaintiff again asserted it was valid. Deputy Steinberg then asked Plaintiff whether she had obtained an Oregon ID card from the DMV. Plaintiff responded she had not obtained an Oregon ID card, which conformed with the DMV record that Deputy Steinberg accessed in his vehicle when he first stopped Plaintiff. Deputy Steinberg now asserted, however, that the DMV issued Plaintiff an ID card in December 2004 and that Plaintiff had turned it into a driver's license. Plaintiff again insisted she had not received any ID card and that her license was not fake. Deputy Steinberg recited the following facts: The license in Plaintiff's possession was dated July 6, 2004; her license had been suspended since July 2004; she stated earlier that her license had been seized after July 2004; and she had not taken any affirmative action to reinstate her license after the most recent suspension. Plaintiff agreed with Deputy Steinberg's first two assertions, but she insisted her license had not been seized after July 2004.

During this discussion, Jose Antonio Quintero-Martinez arrived to pick up Plaintiff. Plaintiff told Deputy Steinberg to ask Quintero-Martinez when Plaintiff's license was seized and then refused to discuss the issue with Deputy Steinberg any

6 - OPINION AND ORDER

longer.  Quintero-Martinez reported Plaintiff's license had been
seized "awhile ago, it was in the summer."  Deputy Steinberg
asked whether the seizure occurred before or after July, and
Quintero-Martinez responded it happened before July.  When Deputy
Steinberg told Plaintiff that he was going to arrest her "for
having a fake ID," Quintero-Martinez told Deputy Steinberg that
Plaintiff's ID was not fake.  Nevertheless, Deputy Steinberg gave
Plaintiff a *Miranda* warning and arrested her for First Degree
Forgery and Using an Invalid License.

Before preparing his paperwork regarding Plaintiff's arrest,
Deputy Steinberg checked a database maintained by the Clackamas
County Sheriff's Office and found two prior entries for
Plaintiff, one of which occurred during the time Plaintiff's
license had been suspended.  The incident, a domestic dispute
involving Plaintiff and Quintero-Martinez, occurred in December
2004.  Although Deputy Steinberg emailed the Clackamas County
Sheriff's Deputy who responded to the incident and asked whether
he remembered seizing Plaintiff's license, it is not clear
whether the deputy responded.  Deputy Steinberg also reviewed the
DMV records.  This time he noted the records reflected the DMV
had issued a license to Plaintiff on July 6, 2004, but had not
issued any subsequent license to Plaintiff.  After Deputy
Steinberg completed his report and the paperwork required to
submit the matter to the Clackamas County District Attorney's

7 - OPINION AND ORDER

Office, he did not have any further involvement in the decision to prosecute Plaintiff.

On June 13, 2005, Deputy Steinberg appeared as a witness before the Grand Jury regarding the charges against Plaintiff. Deputy Steinberg testified about his memory of the events that took place on March 30, 2005.  The Grand Jury examined the license that Plaintiff produced on the night of her arrest and indicted Plaintiff on the charges of First Degree Forgery and Using an Invalid License.

In October 2005, Plaintiff evidently surrendered on a warrant based on the Grand Jury Indictment and spent one night in custody.  According to Plaintiff, "on January 18, 2006 all charges [against Plaintiff] were dropped."

On March 16, 2007, Plaintiff filed a Complaint in this Court against Deputy Steinberg and Clackamas County pursuant to 42 U.S.C. § 1983 in which she alleged Defendants violated her right to be free of unreasonable seizure under the Fourth Amendment of the United States Constitution due to her "wrongful initial arrest and subsequent arrest, wrongful initial incarceration and subsequent arrest and the wrongful seizure and disposal of plaintiff's vehicle and seizure and confiscation of her valid driver's license."  Plaintiff also brought a claim for violation of her rights to due process under the Fifth and Fourteenth Amendments to the United States Constitution on the ground that

Defendants' actions "were arbitrary and capricious and [an] abuse
of discretion in arresting plaintiff originally and re-arresting
her and indicting her for forgery."  Finally, Plaintiff brought a
claim for negligence alleging Clackamas County was "negligent in
its hiring, training, supervision, and retention of Deputy
Steinberg" and Deputy Steinberg was negligent "in his failing to
properly know or learn DMV codes prior to arresting plaintiff and
testifying inaccurately as to Ms. Johnston's Oregon Driver's
license status."

On July 13, 2007, Plaintiff filed an Amended Complaint
pursuant to § 1983 in which she alleges Defendants violated her
right to be free of unreasonable search and seizure under the
Fourth Amendment of the United States Constitution due to her
"wrongful initial arrest and subsequent arrest, wrongful initial
incarceration and subsequent arrest and the wrongful seizure
and disposal of plaintiff's vehicle and seizure and confiscation
of her valid driver's license."  Plaintiff also brings a claim
for negligence in which she alleges Deputy Steinberg was
negligent "in his failing to properly know or learn DMV codes
prior to arresting plaintiff and testifying inaccurately as to
Ms. Johnston's Oregon Driver's license status" and Clackamas
County negligently hired, trained, supervised, and retained
Deputy Steinberg.  Plaintiff no longer asserts a claim for
violation of her rights to due process under the Fifth and

9 - OPINION AND ORDER

Fourteenth Amendments.

On December 3, 2007, Defendants moved for summary judgment. On April 4, 2008, the Court heard oral argument on Defendants' Motion.  At the hearing, Plaintiff clarified she was not bringing any claims related to her initial encounter with Officer Steinberg.  The Court took Defendants' Motion under advisement on April 4, 2008.


## **STANDARDS**

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact.  *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005).  In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial.  *Id.*

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all reasonable inferences in favor of the nonmoving party.  *Id.*  "Summary judgment cannot be

10 - OPINION AND ORDER

granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936*, 680 F.2d 594, 598 (9th Cir. 1982)).

A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990). When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *Wong v. Regents of Univ. of Cal.*, 379 F.3d 1097 (9th Cir. 2004), as amended by 410 F.3d 1052, 1055 (9th Cir. 2005) (citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id.*

## DISCUSSION

Plaintiff alleges (1) her arrest violated her right to be free from unreasonable seizure under the Fourth Amendment and her right to be free from false arrest under Oregon law;

11 - OPINION AND ORDER

(2) Clackamas County negligently hired, trained, supervised, and retained Deputy Steinberg; and (3) Deputy Steinberg was negligent for "testifying inaccurately [before the Grand Jury] as to [Plaintiff's] Oregon Driver's license status."

Defendants move for summary judgment on the grounds that, among other things (1) Defendants did not violate Plaintiff's Fourth Amendment rights, (2) Plaintiff was not injured due to any negligence of Clackamas County in its supervision or training of Deputy Steinberg, and (3) Deputy Steinberg is entitled to absolute immunity for his testimony before the Grand Jury.

**I.   Defendants did not violate Plaintiff's rights under the Fourth Amendment of the United States Constitution.**

Plaintiff brings her federal claim pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

Section 1983 creates a private right of action against persons who, acting under color of state law, violate federal constitutional or statutory rights. *Devereaux v. Abbey,* 263 F.3d 1070, 1074 (9th Cir. 2001). To prevail on a claim under § 1983, a plaintiff must establish (1) the defendant acted under color of law and (2) the action resulted in the deprivation of a

12 - OPINION AND ORDER

constitutional right or federal statutory right. *Jones v. Williams*, 297 F.3d 930, 934 (9ᵗʰ Cir. 2002).

As noted, at the end of the initial traffic stop, Deputy Steinberg issued citations to Plaintiff for driving without a valid license and a current registration, towed Plaintiff's vehicle, and informed Plaintiff that she was free to go. After Plaintiff left the scene on foot, Deputy Steinberg recontacted her approximately seven minutes later and re-engaged her about the validity of her driver's license. Plaintiff alleges this second contact and her subsequent arrest violated her right to be free from unreasonable seizure under the Fourth Amendment.

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.

"The Fourth Amendment does not proscribe all state-initiated . . . seizures; it merely proscribes those which are unreasonable." *United States v. Willis,* 431 F.3d 709, 714 (9ᵗʰ Cir. 2005)(quoting *Florida v. Jimeno*, 500 U.S. 248, 250 (1991)).

Under the Fourth Amendment, a police officer may arrest a person without a warrant if the officer has probable cause to believe the person has committed a crime. "Probable cause"

exists if the available facts suggest a "fair probability" that
the suspect has committed a crime. *Tatum v. City and County of
San Francisco*, 441 F.3d 1090, 1094 (9th Cir. 2006)(quoting *United
States v. Valencia-Amezcua*, 278 F.3d 901, 906 (9th Cir. 2002)).

To determine whether Deputy Steinberg had probable cause at
the time of Plaintiff's arrest, the Court must determine
"'whether at that moment the facts and circumstances within
[Deputy Steinberg's] knowledge . . . were sufficient to warrant a
prudent man in believing that the petitioner had committed or was
committing an offense.'" *Edgerly v. City and County of San
Francisco*, 495 F.3d 645, 651 (9th Cir. 2007)(quoting *Beck v.
Ohio*, 379 U.S. 89, 91 (1964)).  "Although conclusive evidence of
guilt is not necessary to establish probable cause, 'mere
suspicion, common rumor, or even strong reason to suspect are not
enough.'"  *Id*. (quoting *United States v. Lopez*, 482 F.3d 1067,
1072 (9th Cir. 2007)).  Generally, officers need not have
probable cause for every element of the offense, but they must
have probable cause for specific intent when it is a required
element.  *Lopez,* 482 F.3d at 1072-73.

When Deputy Steinberg stopped Plaintiff for a second time,
he arrested her for First Degree Forgery and Using An Invalid
License.  Oregon law defines First Degree Forgery as follows:

> [I]f, with intent to injure or defraud, the
> person:  . . . Falsely makes, completes or alters
> a written instrument; or Utters a written
> instrument which the person knows to be forged.

> And the written instrument is or purports to be
> . . . a public record

Or. Rev. Stat. §§ 165.007(1)(a)and(b), 165.013(a)(1)(E).  In

addition, Oregon Revised Statute § 807.580(1) defines Using an

Invalid License as

> knowingly display[ing] or permit[ting] to be
> displayed or possess[ing] any license or driver
> permit that the person knows is fictitious,
> canceled, revoked, suspended or fraudulently
> altered.

Oregon law also provides:  "A peace officer may arrest a person

without a warrant if the officer has probable cause to believe

that the person has committed . . . a misdemeanor."  Or. Rev.

Stat. § 133.310(1)(b).  Both First Degree Forger and Using An

Invalid License are Class A Misdemeanors under Oregon law.  Or.

Rev. Stat. §§ 165.007(2), 807.580(2).  Accordingly, a police

officer may arrest an individual for either First Degree Forgery

or Using An Invalid License under Oregon law if the officer has

probable cause to believe the individual had committed or was

committing either of these offenses.

To support their assertion that Deputy Steinberg had

probable cause to arrest Plaintiff for First Degree Forgery and

Using and Invalid License, Defendants rely on Deputy Steinberg's

initial interaction with Plaintiff, his reconsideration of the

circumstances during the seven minutes between the first and

second encounters, and his extended examination of Plaintiff's

license.  In particular, Defendants point out that the

15 - OPINION AND ORDER

information obtained by Deputy Steinberg when he ran a check of Plaintiff's license through the DMV computer at the time of the first stop did not show Plaintiff had received a license from the DMV on July 6, 2004. Deputy Steinberg only learned after the second encounter that the DMV, in fact, had issued Plaintiff a license on July 6, 2004. In addition, Plaintiff gave Deputy Steinberg conflicting information during the first encounter: She initially told him that her license had been seized at some point after July 2004, but, nevertheless, the license she presented to Deputy Steinberg was issued in July 2004. Plaintiff also provided inconsistent accounts as to how she had obtained the license and whether she had changed her address with the DMV. Finally, after re-examination of Plaintiff's license between the first and second encounter, Deputy Steinberg concluded the license looked unusual, looked different than his own license, and was fake.

Plaintiff, however, notes Deputy Steinberg accused her in the second encounter of altering an Oregon identification card to create the license at issue even though the DMV records that Deputy Steinberg reviewed when he stopped Plaintiff in the initial encounter did not reflect Plaintiff had received an Oregon ID card. In addition, Plaintiff points out that Deputy Steinberg is not an expert in forgery or forged driver's licenses.

16 - OPINION AND ORDER

Oregon law requires specific intent to injure or to defraud with respect to the forged document to establish the crime of First Degree Forgery. *See* Or. Rev. Stat. §§ 165.007(1)(a)and(b). As noted, police officers need not have probable cause for every element of the offense, but they must have probable cause for specific intent when it is a required element. *Lopez*, 482 F.3d at 1072-73. Based on the totality of the circumstances here, the Court concludes Deputy Steinberg did not have a reasonable basis to believe there was probable cause as to the specific-intent element of the forgery charge.

Nevertheless, the Ninth Circuit has held "because the probable cause standard is objective, probable cause supports an arrest so long as the arresting officers had probable cause to arrest the suspect for any criminal offense, regardless of their stated reason for the arrest." *Edgerly*, 495 F.3d at 652 (citing *Devenpeck v. Alford*, 543 U.S. 146 (2004)). Deputy Steinberg also arrested and charged Plaintiff with Using An Invalid License. As noted, Using An Invalid License is an arrestable offense under Oregon law and is defined in pertinent part as "knowingly display[ing] . . . or possess[ing] any license . . . that the person knows is . . . suspended." Oregon law requires an individual to pay a fee to the Department of Motor Vehicles in order to reinstate her license after it has been suspended. *See* Or. Rev. Stat. §§ 807.370(23) and (24); 809.380(6). In addition,

17 - OPINION AND ORDER

Oregon law requires the Oregon Department of Transportation to reissue a license on "expiration" of the suspension "upon request of the person."  Or. Rev. Stat. § 809.380(3).

Here the parties do not dispute Plaintiff knew her license had been suspended at some point prior to her encounters with Deputy Steinberg.  It also is undisputed that Plaintiff knew she had not paid any fee to the DMV or requested reinstatement of her license.  Her license, therefore, continued to be suspended. Plaintiff told Deputy Steinberg she had not taken any affirmative action to reinstate her license.  Although Plaintiff may not have been aware of the provisions of Oregon law requiring her to pay a fee or to request the DMV to reissue her license after her suspension expired, Plaintiff's ignorance of Oregon law does not obviate Deputy Steinberg's objectively reasonable belief that Plaintiff was committing the offense of using an invalid license. *See Cheek v. United States*, 498 U.S. 192, 199 (1991)(As a "general rule[,] . . . ignorance of the law or a mistake of law is no defense to criminal prosecution.").  The Court concludes the totality of the circumstances at the time Deputy Steinberg arrested Plaintiff (*i.e.*, that Plaintiff knew her license had been suspended, that Plaintiff knew she had not taken any affirmative actions with the DMV to reinstate her license when her period of suspension expired, and that Plaintiff was driving with a suspended license) "were sufficient to warrant a prudent

man in believing [Plaintiff] had committed or was committing" the
offense of Using An Invalid License.  *See Edgerly*, 495 F.3d at
651.

Accordingly, the Court concludes Deputy Steinberg had
probable cause to arrest Plaintiff for the offense of Using An
Invalid License and, therefore, did not violate Plaintiff's
Fourth Amendment right to be free from unreasonable seizure.

## II.  Defendants did not violate Plaintiff's right under Oregon law to be free from false arrest.

In Plaintiff's Amended Complaint, she brings a claim for
"negligence" in which she alleges in part that Deputy Steinberg
"was negligent in his failing to properly know or learn DMV codes
prior to arresting plaintiff."  The Court is not aware of any
Oregon cases authorizing a negligence claim under the
circumstances present here, and Plaintiff has not identified any
such cases.  In any event, false arrest is an intentional tort
under Oregon law, and, therefore, Plaintiff cannot state a claim
for false arrest as a negligence claim.  *See Hiber v. Creditors
Collection Serv., Inc.*, 154 Or. App. 408, 413 (1998).  Thus, to
the extent that Plaintiff intended to bring a claim for negligent
false arrest under Oregon law, Plaintiff has not alleged a claim
for which the Court can grant relief.

To the extent Plaintiff intended to bring a claim for the
intentional tort of false arrest under Oregon law, "the tort [of
false arrest] has four elements:  (1) defendant must confine

19 – OPINION AND ORDER

plaintiff; (2) defendant must intend the act that causes the confinement; (3) plaintiff must be aware of the confinement; and (4) the confinement must be unlawful." *Hiber*, 154 Or. App. at 413 (citing *Lukas v. J.C. Penney Co.*, 233 Or. 345, 353 (1963), and *Walker v. City of Portland*, 71 Or. App. 693, 697 (1985)).

Oregon Revised Statute § 810.410 provides in pertinent part:

> (2) A police officer may issue a citation to a person for a traffic violation at any place within or outside the jurisdictional authority of the governmental unit by which the police officer is authorized to act:
>
>      (a) When the traffic violation is committed in the police officer's presence; or
>
>      (b) When the police officer has probable cause to believe an offense has occurred based on a description of the vehicle or other information received from a police officer who observed the traffic violation.
>
> (3) A police officer:
>
> * * *
>
> (b) May stop and detain a person for a traffic violation for the purposes of investigation reasonably related to the traffic violation, identification and issuance of citation.
>
> ©) May make an inquiry into circumstances arising during the course of a detention and investigation under paragraph (b) of this subsection that give rise to a reasonable suspicion of criminal activity.

As noted, Oregon law provides:  "A peace officer may arrest a person without a warrant if the officer has probable cause to believe that the person has committed . . . a

misdemeanor."  Or. Rev. Stat. § 133.310(1)(b).  The offense of
Using An Invalid License is a Class A Misdemeanor.  Or. Rev.
Stat. § 807.580(2).  Because the Court has found, based on the
totality of these circumstances, that Deputy Steinberg had
probable cause to believe Plaintiff committed the misdemeanor of
Using An Invalid License, the Court concludes Plaintiff's arrest
was not unlawful under Oregon law.

Accordingly, the Court concludes Deputy Steinberg did not
falsely arrest Plaintiff in violation of Oregon law.

**III. Municipal Liability**

Plaintiff contends "Clackamas County did not properly train
[Deputy] Steinberg in DMV codes or the minimum standards for
probable cause to arrest and should be held liable for this
failure to adequately train, supervise, retain, and hire."

The Supreme Court has held inadequacy of police training may
serve as the basis for § 1983 liability of a public body only
when the failure to train constitutes deliberate indifference to
the rights of people with whom the police come into contact.
*City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).

> [A] violation of federal rights may be a highly
> predictable consequence of a failure to equip law
> enforcement officers with specific tools to handle
> recurring situations.  The likelihood that the
> situation will recur and the predictability that
> an officer lacking specific tools to handle that
> situation will violate citizens' rights could
> justify a finding that [failure] to train the
> officer reflected "deliberate indifference."

*Johnson v. Hawe*, 388 F.3d 676, 686 (9th Cir. 2004)(quoting *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 409-10 (1997)).

Because Deputy Steinberg did not violate Plaintiff's federal rights in either encounter, however, Plaintiff cannot establish Defendant Clackamas County violated her rights under the Fourth Amendment regardless how well or poorly it trained Deputy Steinberg.

**IV.  Deputy Steinberg's Grand Jury Testimony**

Plaintiff also contends Deputy Steinberg was negligent for "testifying inaccurately [before the Grand Jury] as to [Plaintiff's] Oregon Driver's license status."  Defendants, however, assert Deputy Steinberg has absolute immunity from Plaintiff's negligence claim arising from his testimony before the Grand Jury.  Defendants rely on *Briscoe v. LaHue* and *Little v. City of Seattle* to support their position.

In *Briscoe*, the plaintiff sued police officers for allegedly violating the plaintiff's constitutional rights by presenting perjured testimony during a criminal trial.  460 U.S. 325 (1983).  The Supreme Court concluded the officers had absolute immunity from liability for damages arising from their testimony.  *Id.* at 326.  The Court noted the policies behind granting absolute immunity to officers who served as trial witnesses were intended

to avoid intimidation and self-censorship, to prevent
interference with the performance of governmental witnesses'
duties, and to avoid wasteful and time-consuming litigation.  *Id.*
at 342-44.

In *Little v. City of Seattle*, the Ninth Circuit found the
policy considerations set forth in *Briscoe* were "equally
applicable to grand jury testimony."  863 F.2d 681, 684 (9th Cir.
1988).  The Ninth Circuit, therefore, held the defendant officer
was "immune from damages for his testimony before the grand
jury."  *Id.*

Plaintiff acknowledges this line of cases, but contends
Deputy Steinberg is not entitled to immunity for his testimony
before the Grand Jury because he is a "complaining witness"
pursuant to *Paine v. City of Lompoc* and *Harris v. Roderick*.

In *Paine*, the Ninth Circuit recognized in a footnote that
"[a]bsolute witness immunity does not extend to 'complaining
witnesses,' those individuals whose allegations serve to bring
about a prosecution."  265 F.3d 975, 981 n.2 (9th Cir. 2001).  In
*Harris*, the Ninth Circuit noted even though "police officers are
generally entitled to absolute immunity for perjury committed in
the course of official proceedings, . . . complaining witnesses
who wrongfully bring about a prosecution generally are not."

126 F.3d 1189, 1198 (9th Cir. 1997)(citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  The Ninth Circuit concluded "if [the defendant officers] functionally served as complaining witnesses who may be said to have initiated [the plaintiff's] prosecution[,] they are not entitled to absolute immunity for their false statements." *Id.* at 1199.  Accordingly, if Deputy Steinberg served as a complaining witness, he would not be immune from liability for his testimony before the Grand Jury.

In *Malley v. Briggs*, which the Ninth Circuit relied on in *Harris*, the Supreme Court analyzed the issue of immunity of an officer applying for a warrant.  475 U.S. 335, 340-41 (1986). The Court noted at common law "the generally accepted rule was . . . one who procured the issuance of an arrest warrant by submitting a complaint could be held liable if the complaint was made maliciously and without probable cause.  Given malice and the lack of probable cause, the complainant enjoyed no immunity." 475 U.S. at 340-41.  After further analysis, the Court concluded with respect to "an officer whose request for a warrant allegedly caused an unconstitutional arrest" that "[o]nly where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost."  *Id.* at 344-45.

24 - OPINION AND ORDER

Under *Malley* and *Harris*, therefore, a complaining witness is one who "may be said to have initiated [the plaintiff's] prosecution" when "indicia of probable cause [is so lacking] as to render official belief in its existence unreasonable." Here even though Deputy Steinberg, in effect, initiated Plaintiff's prosecution in that he filed the underlying paperwork with the Clackamas County District Attorney's Office and testified before the Grand Jury, the record does not reflect his report or testimony were based on facts so lacking "indicia of probable cause as to render official belief in its existence unreasonable." Indeed, the Court has already found the underlying arrest was supported by probable cause. In addition, Plaintiff has not offered any evidence of malice on the part of Deputy Steinberg. The Court, therefore, concludes the exception to absolute immunity recognized in *Paine*, *Harris*, and *Malley* does not apply under these circumstances, and Deputy Steinberg is entitled to absolute immunity for his testimony before the Grand Jury.

In summary, the Court concludes Defendants did not violate Plaintiff's rights under the Fourth Amendment or under Oregon law. In addition, the Court concludes Clackamas County is not liable under § 1983 and Deputy Steinberg is absolutely immune for his testimony before the Grand Jury.

25 - OPINION AND ORDER

Accordingly, the Court grants Defendants' Motion for Summary Judgment.

## **CONCLUSION**

For these reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment (#12) and **DISMISSES** this matter **with prejudice**.

IT IS SO ORDERED.

DATED this 28th day of April, 2008.


   /s/ Anna J. Brown
ANNA J. BROWN
United States District Judge